THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA L. ANDERSON and SCOTT L. ANDERSON,<br><br>                              Plaintiffs,<br><br>    v.<br><br>CITY OF BAINBRIDGE ISLAND, a municipal corporation, et al.,<br><br>                              Defendants. | No. 3:10-cv-05004-RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>[Dkt. #49] |

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment [Dkt. #49]. Plaintiffs Scott and Cynthia Anderson sued the City of Bainbridge Island, its Police Department, Lt. Susan Schultz, and Former Deputy Chief Mark Duncan.

The case arises out of a series of domestic disturbances at the Anderson home in November 2007. Scott Anderson was at that time a Bainbridge Island Police officer, and lived on Bainbridge with his wife Cynthia and their two sons, Taylor (then 18) and Max (then 16). These disturbances led to Mrs. Anderson's transport for an involuntary psychological assessment, the Court's entry of a protection order against her at the request of Mr. Scott, and investigations by the Port Orchard Police Department and Child Protective Services (CPS). Mr. Scott's refusal to cooperate in those investigations led to an internal investigation by the Bainbridge Island Police Department. He refused to

ORDER - 1

cooperate in that investigation as well and when ordered to do so he terminated his employment with the department.

In this consolidated action, Mr. and Mrs. Scott allege a wide range of clams against the Defendants. They claim that Mrs. Scott's Fourth Amendment rights were violated when she was sent to the hospital against her will; that the Defendants "interfered with their marriage" in violation of their substantive due process right under the Fourteenth Amendment; and that the City has *Monell* liability under §1983. Mrs. Anderson also asserts state law claims including false arrest and false imprisonment.

Mr. Anderson additionally asserts a state law wrongful termination/constructive discharge claim, a state law intentional/negligent infliction of emotional distress claim, and a claim based on his public records request. He also asserts a §1983 claim for violation of his Fifth Amendment rights.

Defendants move for summary judgment on each claim, arguing that Plaintiffs cannot demonstrate any Constitutional violations, and that the individual defendants are qualifiedly immune from the plaintiff's §1983 claims against them. They argue that Plaintiffs cannot establish the elements of their state law claims and that all claims fail as a matter of law.

Plaintiffs argue that there as material issues of fact precluding summary judgment.

**A. Factual background.**

This case involves the sad story of a family in crisis. On October 28, 2007, Max Anderson[1] was arrested by a Bainbridge Island Police officer for passing illegally and evading. Cynthia was very upset and angry about this arrest, and she spoke to the Police Department about it. Apparently as a result of stress related to the arrest, plaintiff Cynthia Anderson obtained a prescription for, and began taking, Xanax. There is some evidence that she took more pills than were prescribed, and that due to prior bouts with alcohol

---

[1] Max Anderson sued Bainbridge Island as the result of this arrest. *See* Cause No. 09-5797RBL.

ORDER - 2

abuse, she substituted Xanax for alcohol. In any event, it is undisputed that she did not react well to the medication.

On November 3, 2007, Cynthia told Max that "if she committed suicide, the Police would drop the charges [against Max] so fast your head would spin." She also referenced her concern that Scott Anderson kept loaded guns in the house, a point that Max disputed. She showed Max a shotgun shell, and, to demonstrate that she was correct, Cynthia suggested she could or should shoot a hole in the wall to prove a point. Mrs. Anderson denies that she threatened to shoot anyone. The next morning, Max awoke and his mother was gone. He called 911 because she had taken her medications and because he was afraid she might harm herself. An officer responded, found a broken clock on the floor, and "rambling" note about the family and comments directed at Scott Anderson.

While the officers were there, Cynthia Anderson returned home. The police report reflects that Anderson said she would not kill herself today, discussed that if she were to do so she would use a car and a hose, and made a joke about the officer's need to hold onto his gun because she might use it. The officers suggested, and Cynthia Anderson agreed, that she talk to a mental health professional.

Two days later (November 6), Cynthia got into an argument with her son Taylor Anderson, about whether Taylor should be allowed to drive, and her insistence that he take a drug test. Scott Anderson returned home at his wife's request, and began arguing with Taylor about the drug test. While she was in the bathroom, Cynthia obtained and broke a plastic razor and said something like "look what I could do."

Scott Anderson then handcuffed his wife, and called 911. He also called a fellow officer, Duncan, and the then police chief, Haney. Duncan testifies that Scott Anderson told him Cynthia had threatened to kill herself, and that Taylor Anderson told him she tried to cut her wrists. Cynthia told Duncan she wanted an attorney. Duncan refused, and claims that he told her she was not under arrest.

ORDER - 3

Duncan decided to transport Mrs. Anderson to Harrison Hospital for an involuntary assessment, based in his belief that she was a threat to herself or others. She remained handcuffed during transport, and she arrived at the hospital at about 9:00 a.m. Hospital records reflect that Scott Anderson reported that she had made threats to kill him or herself, and that she had "got out a shotgun 3 days before but was unable to operate." Cynthia Anderson now denies she made any threats, and apparently claims that the reported threats were fabricated as an excuse for detaining her.

Cynthia Anderson claims that after she was examined, it was determined that she could be released. In her deposition she admits she was told she would be released into a voluntary commitment, and that the hospital staff was looking for a place to take her. In any event, Cynthia claims that Defendant Shultz was responsible for a delay in Cynthia's release from Harrison. These efforts included faxing her own report about the incident, and Duncan's report, to Harrison. Cynthia was eventually released to her husband. Defendants submit evidence (in the form of Scott Anderson's deposition) that the decision not to immediately retrieve Cynthia from the Hospital was made by Scott Anderson, because of his belief that the family "needed help," and because he was not being "proactive or definitive."

On November 7, Mr. Anderson filled out and filed[2] a petition to the Bainbridge Island Municipal Court seeking a protection order against his wife. Included in this application was Mr. Anderson's recitation that Cynthia Anderson had, on November 3, said to him "I want to kill you and kill myself, you will get nothing, nothing!" and "I will literally kill you." He claimed that Cynthia Anderson had, on 11-4, 11-5, and 11-6 -07, "made numerous threats to kill herself or kill me." He also recited the story about the shotgun and the razor, and claimed that after the threats he had barricaded himself in a separate room to sleep. Scott Anderson also sought the appointment of a guardian ad litem for his son. Both requests were granted.

---

[2] Defendants suggest this was filed November 8, but the documents reflect November 7.

ORDER - 4

On November 27, 2007, Scott Anderson submitted a Public Disclosure Request to Bainbridge Island seeking the police reports related to the incidents at his home. The request was denied on December 21, 2007, due to the ongoing nature of the investigations.

Cynthia Anderson claims that Scott sought this protection due to the urging or insistence of Defendant Shultz. Plaintiffs also allege that Shultz sent a report to Child Protective Services that claimed Cynthia was a threat to Max, and that this was not true.

On November 13, 2007, Scott Anderson filed a Motion to Modify/Terminate the Protection Order. He state that the events causing him to file the initial Request were caused by a temporary medical event, and that the "temporary rage" had subsided. He stated that "both the doctor and the treatment center agree that she is no longer a threat to herself or others" and that "the Order is no longer appropriate."

Based on these events, Officer Duncan told chief Haney that the Bainbridge Island Police Department should have an outside police agency do an investigation. On November 9, Port Orchard Sergeant Jason Glanz was assigned the investigation. Scott Anderson and his sons were not willing to cooperate with this investigation. He filed his report December 19, 2007, and on January 3, 2008, the Kitsap County Prosecutor decided not to pursue charges against Cynthia Anderson, due to "insufficient evidence."

Scott Anderson also told Duncan that he would not cooperate with any investigation, invoking what he called the marital privilege. According to Duncan, Scott told him that Cynthia could ruin his career. Scott Anderson had previously reported to his Department that Cynthia had threatened to do so, by lying to the department and accusing him of domestic violence. Cynthia acknowledges that this report was made, but does not recall making the threats. Max corroborated Scott's report, and another officer told Glanz that he heard Cynthia make such threats. Because Scott Anderson refused to cooperate, Duncan determined that the Bainbridge Island Police Department should commence an internal investigation of Mr. Anderson.

ORDER - 5

On December 10, 2007, Lt. Bob Day began an investigation. Scott refused to cooperate with that investigation as well. He was told he had to cooperate or risk discipline. Scott Anderson resigned in a letter to chief Haney on January 3, 2008. The investigation's allegations were sustained, but because of the resignation, there was no discipline.

Cynthia Anderson's lawsuit (this action) was filed January 6, 2010. Scott Anderson sued in March, 2010, and the cases were consolidated.

**B. Discussion.**

    **1. Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**2. Qualified immunity and §1983 claims.**

In order to state a claim under 42 U.S.C. §1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

Defendants are entitled to qualified immunity from damages for civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819.

In analyzing a qualified immunity defense, the Court must determine: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful. *See Gabbert v. Conn*, 131 F.3d 793, 799 (9th Cir.1997); *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir.1996).

To be clearly established, the law must be sufficiently clear that a reasonable official would understand that his or her action violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court should look to whatever decisional law is available to

determine whether the law was clearly established at the time the alleged acts occurred. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985).

### 3. Cynthia Scott's involuntary transport to the hospital did not violate her Fourth Amendment Rights or constitute false arrest or imprisonment as a matter of law.

Plaintiff Cynthia Anderson's first Constitutional claim is that her involuntary transport to Harrison Hospital was an arrest, and that the arrest was made without probable cause. Based on these same facts, she alleges state law claims for false arrest and imprisonment[3].

Mrs. Anderson's claims depend primarily on her claim that none of the threats reported actually occurred. She denies that she ever threatened or intended to kill or harm herself or anyone else, and denies that other members of her family[4] ever claimed that she had. She apparently contends that in these denials create a factual question about the propriety of her transport to the hospital.

Police may arrest a person without a warrant if the arrest is supported by probable cause. *See United States v. Hoyos*, 892 F.2d 1387 (9th Cir. 1989). Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime. *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992). As Plaintiffs implicitly concede, probable cause is an absolute defense to a claim for false arrest under state law or §1983 claims under the Fourth Amendment.

Assuming that the transport was in fact an "arrest," it is clear as a matter of law that Officer Duncan had probable cause to cause Mrs. Anderson to be transported against her

---

[3] Plaintiffs claim that the state law claims are addressed only to the City, and not to the individual officers. This distinction does not change the analysis.

[4] Plaintiff Cynthia Anderson's Declaration is filled with hearsay on this topic, including repeated references to her "information and belief" about what her sons did or did not say to third parties. This evidence is not admissible and is not sufficient to raise a question of fact on these topics.

ORDER - 8

will for a mental evaluation. Facts supporting this belief include the two 911 calls, reports from family members that Cynthia Anderson was threatening to harm or kill herself or others, her comments that she would not kill herself "today," the note, the broken clock, the broken razor, the recitation of the shotgun incident, and the fact that a fellow officer – Scott Anderson – had handcuffed his wife in an effort to avoid such violence. Other circumstances are outlined in the facts above and still more are found in the record.

Viewed from the perspective of the officer, the totality of the circumstances presented demonstrated a strong likelihood that Cynthia Anderson was a threat to herself or others at the time the decision was made, and no reasonable jury could find otherwise. To conclude otherwise is to place on the officers the burden of determining that Scott and Max and Taylor were lying, and in turn assuming the risk that that determination was wrong. There was probable cause to transport Mrs. Anderson as a matter of law.

Even if she could conceivably make out a *prima facie* Fourth Amendment claim, the officers involved in the decision are entitled to qualified immunity as a matter of law. Any right to be left alone in the wake of the 911 call described in this case is not clearly established, and there is literally no support for the claim that an officer viewing these circumstances should have been aware of that right.

The Defendants' Motion for Summary Judgment on Plaintiff Cynthia Anderson's Fourth Amendment claim (and corresponding state law false arrest and imprisonment claims) is GRANTED and those claims are DISMISSED with prejudice.

**4. Cynthia Scott's claim the Defendant Shultz sought to keep her at the hospital longer than necessary fails as a matter of law**.

Plaintiff Cynthia Anderson makes a related claim that Officer Shultz was responsible for a delay in Mrs. Anderson's release from Harrison Hospital. This claim is based on the claim that Shultz sent two police reports to the hospital. There is no evidence

ORDER - 9

supporting the claim that this had any effect on the length of stay. In any event, Mr. Anderson has admitted that once his wife was released, he and he alone made the decision not to pick her up immediately.

There is literally no evidence that anything Shultz did caused Mrs. Anderson to remain in the hospital any longer than necessary, and there is no factual or legal basis for this claim. If and to the extent this is a separate Fourth Amendment claim, it too is DISMISSED with prejudice.

### 5. Plaintiffs' claim that defendants "interfered with their marriage" fails as a matter of law.

Both Plaintiffs assert Substantive Due Process claims under the Fourteenth Amendment, arguing that Defendants violated their liberty interest in their marriage and unconstitutionally interfered with it. This claim is apparently based on the transport, and the subsequent investigations of Cynthia (by the Port Orchard Police) and Scott (internally, by the Bainbridge Island Police). It also relies on the fact that Mr. Anderson resigned rather than cooperate with the investigations, citing the "marital privilege."

Defendants argue that Plaintiffs have failed to state a claim, contending that the Fourteenth Amendment applies to marital relationships only to the extent that laws interfere with (limit or prohibit) marriage. They argue that Plaintiffs cannot cite any case suggesting that one colleague urging another to seek a protection order, or investigating repeated 911 calls alleging domestic violence, can amount to a Constitutional violation. Indeed, as Defendants argue, there is no claim for "alienation of affection" in Washington. *See Wyman v. Wallace* 94 Wn.2d 99 (1980).

Plaintiffs argue that the Defendants' insistence that Mr. Anderson cooperate into the investigation of Mrs. Anderson was unjustified and violated his spousal privilege and, apparently, his Fifth Amendment rights. They cite two cases, apparently for the proposition

ORDER - 10

that compelling one spouse to cooperate with a domestic violence investigation of the other is Unconstitutional. These cases do not support this claim.

The first case, *Arthur Anderson LLP v. US*, 544 U.S. 696 (2005), was the result of an obstruction of justice criminal prosecution. In discussing the criminality of persuading another not to cooperate in a governmental investigation, the Supreme Court noted that it had correctly exercised restraint in assessing the reach of criminal statutes on this subject. It stated:

> Such restraint is particularly appropriate here, where the act underlying the conviction - "persuasion" - is by itself innocuous. Indeed, "persuading" a person "with intent to ... cause" that person to "withhold" testimony or documents from a Government proceeding or Government official is not inherently malign. Consider, for instance, a mother who suggests to her son that he invoke his right against compelled self-incrimination, see U.S. Const., Amdt. 5, or a wife who persuades her husband not to disclose marital confidences (citation omitted).

*Id*. At 703-704. This case is not support for the Plaintiffs' claim that an agency violates the Constitution by investigating complaints of domestic violence, even where that investigation asks one spouse about the conduct of the other.

The other opinion relied upon by the Plaintiffs, *United States v. Doss*, 2011 WSL 117628 at *6 (9th Cir, 2011), is similar, and similarly unhelpful. *Doss* involved a witness tampering prosecution of a spouse who persuaded his wife not to testify against him. The Court held that, under *Arthur Anderson*, the district Court should have granted the Defendant's Motion for Acquittal.

These cases might provide a strong defense for Mrs. Anderson if she were prosecuted for tampering, for persuading Mr. Anderson to invoke his marital privilege and to refuse to testify against her. They do not support the claim that the Defendants'

ORDER - 11

insistence that Mr. Anderson cooperate[5] with the investigation into Mrs. Anderson's threats against him constituted an Unconstitutional interference with his marriage. There are no opinions cited for the proposition that such a claim exists under these circumstances. Indeed, the spousal privilege is a rule of evidence, not a substantive Constitutional right.

Nor is there legal or logical support for the claim that responding to the 911 calls, determining that Mr. Anderson's reports of threats of violence suggested that Mrs. Anderson was a danger to herself or others, and transporting her to a hospital for evaluation, can support an "interference with marriage" claim.

Defendants also argue that, in any event, to make out a Constitutional violation, Plaintiffs must demonstrate that the Defendants intended to injure their marital relationship. Plaintiff Cynthia Anderson asserts that she does not have to prove the injury was intentional, but the Supreme Court has held that "the Due Process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life liberty or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Because there was no injury to the marital relationship in violation of the Constitution, and because there is no evidence that any impact was intentional, the Plaintiffs' "marital interference" claim fails as a matter of law.

Finally, even if the elements of a Constitutional violation could be made out, the Plaintiffs have not and cannot show that the rights at issue were "clearly established." To conclude otherwise would be to hold that a police department could not investigate an officer's complaints of domestic violence by his spouse, for fear that doing so might

---

[5] The Bainbridge Island Police Department Policies and Mr. Anderson's Collective Bargaining Agreement required him to cooperate in an investigation, even if the suspect was his wife. This fact bolsters the conclusion that asking him to cooperate was not a violation of his Constitutional rights.

ORDER - 12

adversely impact the underlying marriage. There is no authority for this conclusion. The Individual Defendants are therefore entitled to qualified immunity.

The Defendants' Motion for Summary Judgment on this claim is GRANTED, and Plaintiffs' claim is DISMISSED with prejudice.

### 6. Scott Anderson's Chapter 49.60 RCW wrongful discharge claim fails as a matter of law.

Plaintiff Scott Anderson alleges a state law claim for wrongful (constructive) discharge under Chapter 49.60 RCW. This statute, broadly, prohibits discrimination in employment.

Anderson claims that he was the victim of marital status discrimination, because he was treated disparately due to his marriage to Cynthia. Specifically, he claims that he was forced to choose between cooperating with the investigations triggered by the 911 calls and his subsequent Protection Order, and resigning. There are literally no reported cases supporting the claim that the circumstances of this case, even viewed in the light most favorable to the Plaintiff, amount to "discrimination on the basis of marriage." Plaintiff's argument on this subject is, as the Defendants claim, a mixture of concepts, and relies on conclusory arguments which are insufficient as a matter of law to establish a violation of the statute.

Plaintiff has failed to meet his burden of establishing the elements of a claim under RCW chapter 49.60, and his discriminatory discharge[6] claim fails as a matter of law. The Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED with prejudice.

---

[6] Plaintiff does not address the fact that he resigned and must additionally demonstrate that he was constructively discharged.

ORDER - 13

### 7. Scott Anderson's Fifth (and Sixth) Amendment claims fail as a matter of law.

Mr. Anderson asserts a related claim that the Bainbridge Island's insistence that he cooperate in the investigations resulting from the 911 calls was a violation of his Fifth and Sixth Amendment rights. The parties and the court agree that the Fifth Amendment generally protects individuals against self incrimination in the context of a criminal investigation or prosecution. Anderson contends that this right was violated when he was "forced" to resign after he asserted it.

As an initial matter, it is not clear that Mr. Anderson invoked this right, at all; he instead refused to cooperate into an investigation of the conduct of his wife, citing the spousal privilege. More importantly, a claim for the violation of this right does not arise where a defendant was not compelled to testify against himself in a criminal case. *See Chavez v. Martin*, 538 U.S. 760, 769 (2003).

One may "take the fifth" to avoid incriminating himself, but that does not mean there are no consequences for the act. The Fifth Amendment protects against self incrimination in a criminal context; it does not insulate the party asserting it from other consequences, such as employment decisions, for asserting it.

Plaintiff has failed to make out a claim for violation of his Fifth Amendment rights as a matter of law. He has also failed to even argue that his Sixth Amendment claim should survive. The Defendants' Motion for Summary Judgment on these claims is GRANTED, and these claims are DISMISSED with prejudice.

### 8. Plaintiffs have not met their summary judgment burden for establishing a *Monell* claim.

ORDER - 14

Plaintiff also asserts an independent *Monell* claim for Municipal liability against the City of Bainbridge Island. The Constitutional claims asserted have been discussed and dismissed, above.

In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).

Plaintiffs do not allege any additional Constitutional violations against the City. While the *Monell* claim is not a respondeat superior claim, it must allege and establish a Constitutional violation in order to survive Summary Judgment. Plaintiff has not met this burden, as discussed above. Defendants' Motion for Summary Judgment on the Plaintiffs' *Monell* liability claims is therefore GRANTED, and these claims are DISMISSED with prejudice.

**9. Scott Anderson's negligent and or intentional infliction of emotional distress claims fail as a matter law.**

Plaintiff Scott Anderson asserts state law claims for negligent and intentional infliction of emotional distress. These claims are based on the factual allegations made in support of the constitutional claims, discussed above, including specifically the "Hobson's choice" between cooperating with the investigations or resigning. Defendants seek summary judgment on these claims, arguing that negligent infliction of emotional distress is not a stand-alone claim, and the Plaintiff must still demonstrate a breach of a legal duty. They argue that there is no Washington claim for negligent investigation. See *Dever v. Fowler*, 63 Wn. App. 35 (1991).

ORDER - 15

Defendants also argue that intentional infliction of emotional distress (outrage) requires proof of "extreme and outrageous conduct" going "beyond all possible bounds of decency, to be regarded as atrocious and utterly intolerable in a civilized society." *See Kloepfel v. Bokor*, 149 Wn.2d 192 (2003).

As to the latter claim, reasonable minds could not differ. Investigating a series of domestic violence disturbances and 911 calls, with repeated threats of violence and possible mental issues, and even seeking to force an Officer to cooperate in these investigations pursuant to Department Policy and the Collective Bargaining Agreement, does not amount to the tort of outrage in Washington, as a matter of law. The Defendants' Motion for Summary Judgment on Plaintiff's outrage claim is GRANTED and that claim is DISMISSED with prejudice.

Plaintiff's argument in support of the negligent infliction of emotional distress claim is also unpersuasive. Anderson argues that defendants had a "duty" not to discriminate, not to interfere with his marriage, and to not to subject him to a hostile work environment. The first two claims have been addressed, and they are insufficient as a matter of law. Plaintiff has not elsewhere argued that he was the subject of a hostile work environment, and the evidence does not support such a claim. Absent the breach of some duty to the Plaintiff, there can be no claim for negligent infliction of emotional distress. The Defendants' Motion for Summary Judgment on this claim is GRANTED, and this claim is DISMISSED with prejudice.

**10. Scott Anderson's Public records Act claim is time barred and unsupportable.**

Scott Anderson asserts a claim under the Washington Public Records Act, Chapter 42.56 RCW. This claim is based on his assertion that he requested information about the investigations of his wife and then of himself, and the documents were not provided. This

ORDER - 16

request was made November 27, 2007. The Defendants denied the Request in December, claiming that the investigations were ongoing, and apparently based in part on Anderson's claim that he would share the information with his wife.

Since 2005, the limitations period for such a claim is one year. RCW 42.56.550(6); *Tobin v. Worden*, 156 Wn. App. 507, 512 (2010). Plaintiff claims that because the documents have still not been provided, the limitations period has yet to run. The Department denied Plaintiff's request in December 2007, and has not changed that position. Plaintiff's claim that the limitations period does not commence until the records are provided finds not support in the statute, and does not make sense. This claim is time barred. Defendants' Motion for Summary Judgment on this claim is GRANTED and the claim is DISMISSED with prejudice.

***

For these reasons, all of Plaintiffs' claims against all Defendants are dismissed in their entirety, with prejudice.

IT IS SO ORDERED.

DATED this 19th day of April, 2010.

_____
BENJAMIN H. SETTLE
United States District Judge
for RONALD B. LEIGHTON
United States District Court Judge

ORDER - 17